DAVID N. HURD, United States District Judge
I. INTRODUCTION
Pro se plaintiff Samuel Rasheen Raymond Toliver ("Toliver" or "plaintiff") filed this complaint pursuant to 42 U.S.C. § 1983 (" Section 1983") asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 ("Compl.").
In an Order filed on November 19, 2018, United States District Judge Richard J. Arcara of the Western District of New York transferred this action to the Northern District of New York ("Northern District"). Dkt. No. 3 ("Transfer Order").
Toliver, who is presently confined at Gouverneur Correctional Facility ("Gouverneur C.F."), has not paid the statutory filing fee and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").
II. IFP APPLICATION
" 28 U.S.C. § 1915 permits an indigent litigant to commence an action in a *229 federal court without prepayment of the filing fee that would ordinarily be charged." Cash v. Bernstein , No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." Id. (citing 28 U.S.C. § 1915(b) and Harris v. City of New York , 607 F.3d 18, 21 (2d Cir. 2010) ). Section 1915(g) also prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(g).
From a review of Toliver's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, see http://pacer.uspci.uscourts.gov, it does not appear that he had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced. Further, a review of plaintiff's IFP Application confirms that he has demonstrated sufficient economic need. See 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. See Dkt. No. 3. Accordingly, plaintiff's IFP Application is granted.
III. SUFFICIENCY OF THE COMPLAINT
A. Standard of Review
Having found that Toliver meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the sufficiency of the allegations set forth in the complaint must be considered in light of 28 U.S.C. §§ 1915(e) and 1915A.
Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that - ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1]
Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b) ; see also Carr v. Dvorin , 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).
Additionally, when reviewing a complaint, courts may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and *230 plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2).
The purpose of Rule 8"is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Hudson v. Artuz , No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting Powell v. Marine Midland Bank , 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (other citations omitted) ).
A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ). Rule 8"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. Sheehy v. Brown , 335 F. App'x 102, 104 (2d Cir. 2009).
B. Summary of the Complaint
The incidents that form the foundation for the complaint occurred while Toliver was confined at Riverview Correctional Facility ("Riverview C.F."). See generally, Compl. The complaint includes exhibits, see compl. at 39-76, which will be considered to the extent that they are relevant to the incidents described in the pleading. See Cortec Indus., Inc. v. Sum Holding L.P. , 949 F.2d 42, 47 (2d Cir. 1991) (holding that complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).
On September 2, 2016, the Riverview C.F. Inmate Liaison Committee ("ILC") held a meeting. Compl. at 54. Plaintiff does not allege that he was present at the meeting. See Id. However, he does allege that during the meeting the committee noted that the population had "the most complaints" about dirty dishes, water pitchers without lids, spoiled food items, cold food, and undercooked food. Id.
On May 22, 2017, Toliver filed a grievance (RV-11910-17) that claimed an officer used profanity when plaintiff complained that the trays in the mess hall were dirty and wet. Compl. at 59. Defendant Superintendent B. McAuliff ("McAuliff") denied the grievance. Id. Plaintiff appealed, noting that "this has been an ongoing issue since Sept. 2, 2016." Id.
On May 30, 2017, Toliver attempted to mail a stamped, confidential complaint/petition (with exhibits) to the Federal Drug Administration ("FDA") and to the State Department of Health. Compl. at 6, 11, 48-53. In the May 26 complaint to the FDA, plaintiff alleged that he had been served contaminated, raw, and spoiled food at Riverview C.F. since September 2016. Id. at 11, 14, 48-53. With this complaint, plaintiff included a "sample" of food that the *231 FDA could test. Id. Plaintiff's complaint pleaded with the FDA, asking "please don't inform them of the food sample," because he feared retaliation and intended to pursue legal action. Id. In the May 27 complaint to the State Department of Health, plaintiff provided a copy of the September 2016 meeting minutes from the ILC. Id.
On May 30, 2017, defendant K. Adner ("Adner") intercepted, opened, and read Toliver's mail without plaintiff's consent. Compl. at 6, 11-12, 25, 33. Thereafter, Adner confiscated, copied, and destroyed the mail and exhibits. Id. at 6, 8, 11, 13, 25, 27, 33. Plaintiff alleges that these actions were taken at the direction of defendants Deputy Superintendent of Programs Brabart ("Brabart"), Lieutenant Bucley ("Bucley"), Deputy Superintendent of Security Cadwell ("Cadwell"), and McAuliff. See Id.
On May 30, 2017, Adner issued a Tier III misbehavior report charging Toliver with contraband, smuggling, damage to property, and a violation of facility correspondence rules. Compl. at 8, 11, 19, 40, 42. A copy of this misbehavior report is annexed as an exhibit to the complaint, compl. at 39, but the copy is illegible. Plaintiff alleges this was also done at the direction of Brabart, Bucley, McAuliff, and Cadwell. Id. at 6, 8, 11, 13, 25, 27, 33.
On June 2, 2017, a Tier III disciplinary hearing commenced. Compl. at 40. A copy of the hearing disposition is annexed as an exhibit to the complaint, compl. at 41-46, but portions of the attachment are illegible. At the conclusion of the hearing, Toliver was sentence to sixty days in the Special Housing Unit ("SHU") with a corresponding loss of recreation, commissary, packages, and telephone privileges. Id. Plaintiff also lost six months of good time credit. Id. at 27. Plaintiff appealed the determination but, on June 29, 2017, A. Rodriguez, the Acting Director of the SHU, affirmed the decision. Compl. at 57. Rodriguez is not named as a defendant.
On August 24, 2017, Joseph Bellnier, the Deputy Commissioner for Correctional Facilities affirmed the Superintendent's decision. Compl. at 56. Like Rodriguez, Bellnier is not named as a defendant. In any event, as a result of these adverse determinations, the charge remains on Toliver's record and will impact his conditional release date in 2021. Id. at 8, 19. Plaintiff alleges that he actually served 120 days in the SHU. Compl. at 20.
While confined in the SHU, Toliver suffered from a skin rash, "ticks," "crabs," insomnia, depression, and psychological trauma. Compl. at 7, 21, 28, 29. Plaintiff was periodically deprived of meals, clean linens, verbally abused with racial slurs, and physically assaulted. Id. Plaintiff was exposed to unsanitary conditions, cold, and odors due to other inmates urinating and defecating in their cells. Id. Because Plaintiff was confined to the SHU, he was not permitted to participate in his "family Christian religious retreat" in June 2017. Id.
C. Nature of Action
Toliver seeks relief pursuant to 42 U.S.C. § 1983 (" Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n , 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) ). " Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).
V. ANALYSIS
Construing the complaint liberally, Toliver asserts (1) Fourth Amendment claims *232 related to an unreasonable search and seizure; (2) First Amendment claims related to interference and tampering with his legal mail; (3) First Amendment access-to-court claims; (4) conspiracy claims; (5) claims related to the failure to investigate; (6) claims related to violations of certain DOCCS' Directives; (7) Fourteenth Amendment due process claims related to disciplinary confinement; (8) Eighth Amendment claims related to his conditions of confinement; (9) equal protection and discrimination claims; (10) First Amendment retaliation claims; (11) claims based upon violations of 18 U.S.C. §§ 1708 and 1709 ; and (12) claims pursuant to the New York State Constitution. See generally , Compl. Plaintiff seeks monetary damages. Id. at 7. Refer to the complaint itself for a complete statement of plaintiff's claims and the facts he relies on in support of each of those claims.
A. Eleventh Amendment
As an initial matter, Toliver's claims for money damages pursuant to Section 1983 against defendants in their official capacities (see Compl. at 22-23) are barred by the Eleventh Amendment, which has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").
This Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. Gollomp v. Spitzer , 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, see Quern v. Jordan , 440 U.S. 332, 343-45, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint, see generally Trotman v. Palisades Interstate Park Comm'n , 557 F.2d 35, 38-40 (2d Cir. 1977).
As relevant here, actions for money damages against a state official in his or her official capacity are essentially actions against the state. See Will v. Mich. Dep't. of State Police , 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Accordingly, Toliver's claims for money damages pursuant to Section 1983 against defendants in their official capacities (see Compl. at 22-23) are barred by the Eleventh Amendment and must be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).
B. Fourth Amendment
Toliver alleges that defendants illegally intercepted his outgoing mail from the facility mailbox in violation of his Fourth Amendment rights. See Compl. at 12, 15.
"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison, but it must be recognized that a prisoner's constitutional rights are limited by the legitimate penological needs of the prison system." U.S. v. Felipe , 148 F.3d 101, 107 (2d Cir. 1998).
For instance, the "interception of [an inmate's] prison correspondence does not violate that individual's First or Fourth Amendment rights if the prison officials had 'good' or 'reasonable' cause to inspect the mail." Felipe , 148 F.3d at 108 (acknowledging that some claims involving *233 prisoner mail may be asserted under the Fourth Amendment).
However, the Second Circuit has held that "the Fourth Amendment still requires that searches-even those in the prison context-be reasonable." Hodges v. Stanley , 712 F.2d 34, 35 (2d Cir.1983). "What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Harris v. Taylor , No. 9:09-CV-0705 (LEK/GHL), 2010 WL 3021531, at *6 (N.D.N.Y. July 14, 2010) (quoting Skinner v. Ry. Labor Executives' Ass'n , 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) ).
Upon review, Toliver's Fourth Amendment claim against Adner survives initial review and requires a response. See Acevedo v. Fischer , 2014 WL 5015470, at *4 (S.D.N.Y. Sept. 29, 2014) (denying motion to dismiss as the record evidence was insufficient to establish that the mail watch was justified).
However, Toliver's Fourth Amendment claims against Brabart, Bucley, McAuliff, and Cadwell do not. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia , the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven , 720 F.3d 133, 138 (2d Cir. 2013). Accordingly, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " Austin v. Pappas , No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson , 790 F.2d 260, 263 (2d Cir. 1986) ) (other citation omitted).
Where, as here, the defendants are supervisory officials, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. See Polk Cnty. v. Dodson , 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ; Richardson v. Goord , 347 F.3d 431, 435 (2d Cir. 2003) ; Wright v. Smith , 21 F.3d 496, 501 (2d Cir. 1994). In other words, supervisory officials may not be held liable merely because they held a position of authority. Black v. Coughlin , 76 F.3d 72, 74 (2d Cir. 1996).
Prior to Iqbal , the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. Colon v. Coughlin , 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith , 781 F.2d 319, 323-24 (2d Cir. 1986) ).
The Second Circuit has not yet addressed how the Supreme Court's decision in Iqbal affected the standards in Colon for establishing supervisory liability. See Grullon v. City of New Haven , 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of Iqbal on Colon because the complaint "did not adequately plead the Warden's personal involvement even under Colon "); see also Hogan v. Fischer , 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [ Iqbal ] may have heightened the requirements *234 for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing Grullon , 720 F.3d at 139 ).
Upon review of the Colon factors, Toliver's claims against the supervisory defendants are wholly conclusory and must be dismissed.
"A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." Gaston v. Coughlin , 249 F.3d 156, 164 (2d Cir. 2001) (citations and internal quotations omitted).
But Toliver has not pleaded facts sufficient to plausibly suggest that these supervisory defendants were present when, or involved in, Adner's interception and confiscation of his mail. Plaintiff alleges they "directed" Adner to take these actions, but the complaint lacks specific facts related to how and/or when defendants did so. See O'Diah v. Cully , No. 9:08-CV-941, 2013 WL 1914434, at *8 (N.D.N.Y. May 8, 2013) (dismissing claim that superintendent was liable because he directed subordinates to intentionally fail to send out legal mail as conclusory because the plaintiff failed to allege that the defendant directly participated or was informed of the alleged constitutional violation). Accordingly, plaintiff's Fourth Amendment claims against Brabart, Bucley, McAuliff, and Cadwell are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure state a claim upon which relief may be granted.
C. First Amendment
Toliver alleges First Amendment claims related to interference and tampering with his legal mail and related claims for interference with, or denial of, his First Amendment right of access to court.
Generally speaking, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier , 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).
1. Mail Interference
For instance, "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Davis v. Goord , 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). However, a prisoner's right to receive and send mail may be regulated to an extent. See, e.g., Davidson v. Mann , 129 F.3d 700, 702 (2d Cir. 1997). Importantly, though, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." Id. (citation omitted).
To establish a violation, the inmate must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail." Davis, 320 F.3d at 351 (holding that two instances of mail interference were insufficient to state a claim because the plaintiff did not allege that the interference with his mail either constituted an ongoing practice of unjustified censorship, caused him to miss court deadlines, or prejudiced his legal actions).
Toliver has not done this. Instead, plaintiff has alleged that Adner intercepted one piece of mail. See Compl. at 6, 11, 12, 13, 25. Nothing in the complaint suggests a claim of regular mail interference by any named or unnamed defendant. Accordingly, plaintiff's First Amendment claims related to mail interference are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)
*235 for failure state a claim upon which relief may be granted.
2. Access to Courts
The United States Constitution guarantees prisoners a "meaningful right of access to the courts." Bounds v. Smith , 430 U.S. 817, 830, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents[ ] or file them[.]" Lewis v. Casey , 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (internal citations omitted).
To establish a denial of access to the courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. Davis v. Goord , 320 F.3d 346, 351 (2d Cir.2003). Second, the plaintiff must demonstrate that he suffered an actual injury, "i.e. [the defendant] took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." Monsky v. Moraghan , 127 F.3d 243, 247 (2d Cir.1997) (internal citations, quotation marks, and alterations omitted).
Toliver has not done this, either. Plaintiff alleges that defendants' actions interfered with an "anticipated legal action" and prevented him from commencing a "major civil suit" for a "substantial amount of money." See Compl. at 13, 16, 17. But without more, plaintiff has not sufficiently pleaded that the conduct of any of the named defendants resulted in any actual injury to any particular legal claim. See Marino v. Watts , No. 9:12-CV-801 (NAM/RFT), 2014 WL 1794588, at *8 (N.D.N.Y. May 6, 2014) (dismissing access to court claim "without identification of the underlying action which was hindered").
In fact, by filing this lengthy complaint with its attached exhibits, Toliver's actions directly contradict his claim that he was denied access to the courts. Accordingly, plaintiff's First Amendment claims regarding his access to the courts are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.[2] See Smith v. O'Connor , 901 F.Supp. 644, 649 (S.D.N.Y. 1995) ("Plaintiff's complaint does not, however, present any facts to show how such conduct, if it occurred with the requisite mental state, materially prejudiced a pending legal action or one that he sought to file in the courts. At best, plaintiff's allegation that his 'law work' was destroyed supports the conclusion that he was temporarily inconvenienced by the loss of his papers.").
D. Conspiracy
Next, Toliver claims that Brabart, Bucley, McAuliff, and Caldwell conspired with Adner to confiscate his mail and to confine him to the SHU for "revenge." See Compl. at 6.
A conspiracy claim under Section 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. Ciambriello v. Cnty. of Nassau , 292 F.3d 307, 324-25 (2d Cir. 2002).
"[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.' "
*236 Flores v. Levy , No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting Twombly , 550 U.S. at 554, 127 S.Ct. 1955 ). In other words, vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. Ciambriello , 292 F.3d at 325 ; Webb v. Goord , 340 F.3d 105, 110-11 (2d Cir. 2003) (holding that to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds").
Throughout the complaint, Toliver alleges that defendants acted in conspiracy with one another. But the complaint is totally lacking in any facts as to the time, place, or specific object(s) of this alleged conspiracy. Plaintiff instead makes conclusory statements that the defendants "conspired" with each other. These conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the defendants. Accordingly, plaintiff's conspiracy claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.
E. Failure to Investigate
To the extent that Toliver attempts to assert a separate constitutional claim against Defendants for obstructing an investigation into his complaints, see Compl. at 14, that claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. See, e.g., Bernstein v. New York , 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) ("[C]ourts within the Second Circuit have determined that '[t]here is... no constitutional right to an investigation by government officials.").
F. Violations of DOCCS' Directive and Postal Regulations
Toliver claims that defendants violated his constitutional rights when they failed to adhere to DOCCS' Directives and Postal Regulations. See Compl. at 7, 24, 26, 33, 34.
However, a Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. See Hyman v. Holder , No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim); see also McAllister v. Call , No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) ("A section 1983 claim is not the appropriate forum in which to seek review of a violation of unspecified DOCCS rules, regulations and procedures.") (citation omitted). Accordingly, this claim is dismissed with prejudice.
G. Fourteenth Amendment Due Process
Toliver claims that he was deprived of his right to due process during his Tier III disciplinary hearing. See Compl. at 8, 20, 21, 27.
To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. See Ortiz v. McBride , 380 F.3d 649, 654 (2d Cir. 2004) ; Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000) ; Hynes v. Squillace , 143 F.3d 653, 658 (2d Cir. 1998) ; Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996).
"Prison discipline implicates a liberty interest when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Ortiz , 380 F.3d at 654 (quoting *237 Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ); Tellier, 280 F.3d at 80 ; Hynes , 143 F.3d at 658. A prisoner "has a liberty interest that is implicated by [ ] confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " J.S. v. T'Kach , 714 F.3d 99, 106 (2d Cir. 2013) (quoting Sandin v. Conner , 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418, (1995) ); see also Palmer v. Richards , 364 F.3d 60, 64 (2d Cir. 2004).
In making this determination courts should consider, "among other things, the duration and conditions of confinement." J.S. , 714 F.3d at 106 ; Davis v. Barrett , 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." Davis , 576 F.3d at 134 ; Palmer , 364 F.3d at 66 n.4.
Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established certain guidelines. Palmer , 364 F.3d at 65. For instance, where the plaintiff is confined for "an intermediate duration -between 101 and 305 days - 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " Id. (quoting Colon v. Howard , 215 F.3d 227, 234 (2d Cir. 2000) ).
And while confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements nevertheless "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of Sealy or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." Palmer , 364 F.3d at 65 ; see Davis , 576 F.3d at 133.
The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short -less than the 30 days that the Sandin plaintiff spent in SHU-and there was no indication that the plaintiff endured unusual SHU conditions." Palmer , 364 F.3d at 65-66 ; see Davis , 576 F.3d at 133.
Finally, absent allegations in the complaint that the conditions of confinement were in some way atypical, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days. See, e.g., Acevedo v. Fischer , No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).
In this case, Toliver claims that he served 120 days in the SHU.[3] See Compl. at 8, 20. Because this period of disciplinary confinement falls between 101 and 305 days, the Court must look to "the conditions of the imposed confinement relative to the ordinary prison conditions" to determine whether plaintiff suffered an atypical hardship. Reynoso v. Selsky , 292 F. App'x 120, 123 (2d Cir. 2008).
*238 Toliver's sentence included a corresponding loss of recreation, package, commissary, and telephone privileges. Compl. at 40. As to his conditions, plaintiff asserts that he suffered from a skin rash, "ticks," "crabs," insomnia, depression, and psychological trauma due to the conditions of his confinement. Id. at 7, 21, 28, 29. Plaintiff also claims that he was periodically deprived of meals, clean linens, verbally abused with racial slurs, and physically assaulted. Id. Plaintiff alleges he was exposed to unsanitary conditions, cold, and odors due to other inmates urinating and defecating in their cells. Id. And because plaintiff was confined to the SHU, he was not permitted to participate in his "family Christian religious retreat" in June 2017. Compl. at 7, 21, 28, 29.
Assuming that this period of SHU confinement implicated a liberty interest, Toliver's complaint still fails to state a Fourteenth Amendment claim against any named defendant. The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. Sira v. Morton , 380 F.3d 57, 69 (2d Cir. 2004). The hearing officer's findings must be supported by "some reliable evidence." Id. (citing, inter alia, Superintendent v. Hill , 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) ).
Construing the complaint liberally, Toliver claims that Adner issued a false misbehavior report that did not comply with 7 N.Y.C.R.R. § 251-3.1, and did so at the direction of McAuliff, Cadwell, Brabart and Bucley. But a violation of procedural rules or regulations, without more, is not enough to establish a federal constitutional claim . See Batista v. Kelly, 854 F.Supp. 186, 193 (W.D.N.Y. 1994), aff'd , 50 F.3d 2 (2d Cir. 1995) (dismissing due process claim based upon a violation of 7 N.Y.C.R.R. § 251-3.1(d)(3) ).
Toliver goes on to allege that the misbehavior report was not sufficiently specific. But he does not allege how the hearing was unreasonable, or how the hearing resulted in a constitutional violation. Indeed, the complaint lacks any facts related to the hearing or to the evidence and testimony presented, rejected, and / or considered there.
Further, the complaint lacks any facts that suggest Toliver was prejudiced by any of the alleged procedural errors or that the errors affected the outcome of the hearing. See Powell v. Coughlin , 953 F.2d 744, 750 (2d Cir.1991) ; see also Colantuono v. Hockeborn, 801 F.Supp.2d 110, 115 (W.D.N.Y. 2011) ("Plaintiff must show that the outcome of the hearing likely would have been different had [the witnesses] been called.") (citation omitted).
Toliver has also failed to plead that the named defendants were personally involved in the decision to confine him to the SHU. According to the exhibits annexed to the complaint, "SORC Logan," who is not named as a defendant here, presided over the disciplinary hearing on June 2, 2017. Compl. at 40. Similarly, on appeal, the disciplinary determination was affirmed by individuals who are not parties to the action.
Based upon the aforementioned, Toliver's Fourteenth Amendment due process claims related to the disciplinary hearing are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
*239 Toliver further claims that Cadwell, Brabart, or Bucley directed Adner to file a false misbehavior report. See Compl. at 8. However, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder , 105 F.3d 857, 862 (2d Cir. 1997) ; see also Santana v. Olson , No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief.").
In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." Williams v. Smith , 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted).
Instead, "[t]he only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report. In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself." Santana v. Olson , No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007).
As discussed supra , Toliver has failed to plead that he suffered any constitutional violation as a result of the hearings related to these misbehavior reports. Although false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more, such as "retaliation against the prisoner for exercising a constitutional right," Boddie , 105 F.3d at 862, plaintiff's retaliation claims related to misbehavior reports are discussed infra .
Toliver is advised that even if he had sufficiently pleaded a Fourteenth Amendment claim related to the hearing, Heck v. Humphrey , 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) would bar his claim at the present time. In Heck , the Supreme Court held that a § 1983 action seeking money damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 487, 114 S.Ct. 2364 (internal citation omitted).
Conversely, where the 1983 action even if successful will not demonstrate that invalidity of any outstanding criminal judgment or prison disciplinary determination against the plaintiff, the court should allow the action to proceed. Absent such a showing, an inmate may only seek relief in the federal courts through a petition for habeas corpus. See Jenkins v. Haubert , 179 F.3d 19, 23 (2d Cir. 1999).
Moreover, the Heck Court directed that "when a state prisoner seeks damages in a 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck , 512 U.S. at 487, 114 S.Ct. 2364.
In a subsequent case, the Supreme Court noted that " Heck uses the word 'sentence' to refer not to prison procedures, but to substantive determinations as to the length of the confinement." Wilkinson v. Dotson , 544 U.S. 74, 83, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (citation omitted). The Court further explained that *240 " Heck uses the word 'sentence' interchangeably with such other terms as 'continuing confinement' and 'imprisonment.' " Id. (citing Heck , 512 U.S. at 483, 114 S.Ct. 2364 ) (other citation omitted).
The Supreme Court has also made clear that Heck's favorable termination rule applies to challenges made under § 1983 to procedures used in disciplinary proceedings that deprived a prisoner of good-time credits. Peralta v. Vasquez , 467 F.3d 98, 103 (2d Cir. 2006). In Peralta , the Second Circuit ruled that Heck's "favorable termination" rule was not an absolute bar to a prisoner subject to "mixed sanctions," i.e., "sanctions that affect both (a) the duration of his imprisonment and (b) the conditions of his confinement." Peralta , 467 F.3d at 104.
The Second Circuit held that "a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, but ... he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement." Peralta , 467 F.3d at 104 (emphasis in original).
Toliver alleges that he lost six months of "good time" credit that resulted in an extension of his sentence beyond his 2021 conditional release date. See Compl. at 8, 19, 21. Since plaintiff has not demonstrated that his disciplinary determinations have been invalidated, Heck bars a challenge regarding the validity of his conviction unless plaintiff "abandon[s], not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in [this] § 1983 suit." Peralta , 467 F.3d at 104.
If Toliver wishes to file an Amended Complaint with respect to his Fourteenth Amendment rights, plaintiff is directed to also advise in writing, whether he waives for all times all claims in this action relating to disciplinary sanctions affecting the duration of his confinement (i.e., the recommended loss of good time) in order to proceed with claims challenging sanctions affecting the conditions of his confinement.
H. Eighth Amendment
Toliver alleges two Eighth Amendment-based claims. First, plaintiff alleges that inmates have been served undercooked or spoiled food items on wet, dirty trays. See Compl. at 48, 51. Second, plaintiff claims defendants subjected him unconstitutional conditions of confinement in the SHU. Id. at 19, 21, 28, 29.
The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi , 573 F.2d 118, 125 (2d Cir.1978), rev'd on other grounds sub nom. Bell v. Wolfish , 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ; Lareau v. Manson , 651 F.2d 96, 106 (2d Cir. 1981).
"To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." Jolly v. Coughlin , 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " Id. (citation omitted).
"Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to 'basic human needs-e.g., food, clothing, shelter, medical care, and reasonable safety.' "
*241 Brown v. Doe , No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, inter alia, Rhodes v. Chapman , 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) ). Accordingly, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult , 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).
With respect to the subjective element, a plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " Jolly , 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " Walker , 717 F.3d at 125 (quoting Jabbar v. Fischer , 683 F.3d 54, 57 (2d Cir. 2012) ).
1. Issues Related to Food
The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Robles v. Coughlin , 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted). "Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment." Moncrieffe v. Witbeck , No. 86-CV-253 (NAM), 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing Robles , 725 F.2d at 15 ).
Toliver alleges that since September 2016, inmates at Riverview C.F. have been served undercooked or spoiled food items on wet, dirty trays. See Compl. at 48, 51. Plaintiff claims that Riverview C.F. staff disregard, "the poison affect that [dirty trays] can have in our body's mouth" and further alleges that food poisoning is possible. Id.
While Toliver makes general allegations regarding potential health implications, he fails to allege that he actually suffered any injury as a result of ingesting contaminated food. See Stokes v. Goord , No. 9:03-CV-1402 (LEK/DRH), 2007 WL 995624, at *4 (N.D.N.Y. Mar. 30, 2007) (dismissing Eighth Amendment claim because records did not indicate that the plaintiff suffered any adverse health effects from the food served to him by defendants). Accordingly, plaintiff's Eighth Amendment claims related to contaminated food are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.
2. Conditions in the SHU
Toliver claims defendants subjected him unconstitutional conditions of confinement in the SHU. Compl. at 19, 21, 28, 29.
Even assuming these allegations are sufficient to satisfy the objective prong of the Eighth Amendment analysis, Toliver's complaint lacks facts suggesting that the named defendants were responsible or personally involved in the alleged unconstitutional conditions in the SHU. Plaintiff does not plead facts suggesting that the named defendants created or knew about the conditions, or that he complained about the conditions to the aforementioned defendants. Moreover, plaintiff does not allege that he filed any complaints or grievances related to these conditions such that the supervisory defendants could be found personally liable.
Consequently, Toliver's Eighth Amendment claims related to his conditions of confinement in the SHU are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)
*242 for failure to state a claim.[4] See Gomez v. Sepiol , 2014 WL 1575872, at *9 (W.D.N.Y. April 11, 2014) (dismissing the plaintiff's conditions of confinement claim without prejudice to the filing of an amended complaint against the officers that the plaintiff claimed turned off his cold water and deprived him of his basic human needs); see also Toliver v. Dep't of Corrs. , No. 10 Civ. 6298, 2012 WL 4510635, at *9 (S.D.N.Y. Apr. 10, 2012) (dismissing the deliberate indifference claim for failure to plead facts identifying a responsible official who acted with a sufficiently culpable state of mind).
I. Equal Protection
Toliver also invokes the Fourteenth Amendment's Equal Protection Clause, which mandates equal treatment under the law.
Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr. , 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Myers v. Barrett , No. 95-CV-1534 (RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (citation omitted).
In addition, a valid equal protection claim may be brought by a "class of one," "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech , 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) ; Neilson v. D'Angelis , 409 F.3d 100, 105 (2d Cir. 2005).
Toliver's complaint fails to allege any facts suggesting how he was treated differently than any similarly situated inmate. Plaintiff's vague and conclusory allegations are insufficient to plausibly suggest an equal protection violation. See Byng v. Delta Recovery Servs., LLC. , No. 9:13-CV-0733 (MAD/ATB), 2013 WL 3897485, at *15, n. 5 (N.D.N.Y. July 29, 2013) (holding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to any one or that someone else was treated differently than he was). Accordingly, plaintiff's Fourteenth Amendment Equal Protection claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted.
J. Retaliation
Toliver also brings retaliation claims based on the alleged mail interference, false misbehavior reports, and the later SHU confinement.
To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff - namely, action that would deter a similarly situated individual of ordinary firmness *243 from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action - in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle , 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ; Gill v. Pidlypchak , 389 F.3d 379, 380 (2d Cir. 2004).
It is well-settled that filing a grievance is constitutionally protected conduct. Johnson v. Eggersdorf , 8 F. App'x 140, 144 (2d Cir. 2001) ; Graham v. R.J. Henderson , 89 F.3d 75, 80 (2d Cir. 1996). With respect to "adverse action," the Second Circuit has defined such action as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " Gill , 389 F.3d at 381 (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. Id.
However, conduct that is de minimis does not give rise to actionable retaliation. What is de minimis varies according to context. Dawes v. Walker , 239 F.3d 489, 493 (2d Cir. 2001). As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." Dawes, 239 F.3d at 491 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam) ).
If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." Dawes, 239 F.3d at 493. As to the third factor, a plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. Espinal v. Goord , 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted).
The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." Dawes , 239 F.3d at 491, overruled on other grounds by Swierkiewicz v. Sorema N.A. , 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing Flaherty v. Coughlin , 713 F.2d 10, 13 (2d Cir. 1983) ); Franco v. Kelly , 854 F.2d 584, 590 (2d Cir. 1988).
1. Claims Related to Mail Interference
Toliver claims that Cadwell, Brabart, Bucley, and McAuliff directed Adner to interfere with his mail on one occasion in retaliation for plaintiff's filing of grievances and complaints related to food contamination. See Compl. at 11, 33.
Even assuming Toliver has sufficiently pleaded that he engaged in protected conduct with a causal connection to the aforementioned action, this retaliation claim is subject to dismissal as interference with mail does not constitute an "adverse action." As discussed supra , the complaint lacks facts suggesting that this isolated instance of mail tampering caused plaintiff to suffer any injury. Accordingly, plaintiff's First Amendment retaliation claim based upon mail tampering is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)
*244 for failure state a claim upon which relief may be granted. See Tafari v. McCarthy , 714 F.Supp.2d 317, 347 (N.D.N.Y. 2010) ("Courts in this circuit have held that claims of mail tampering do not constitute adverse action.").
2. False Misbehavior Report
Toliver claims that Adner issued a false misbehavior report in retaliation for plaintiff's complaint/petition to the FDA and to the State Department of Health. See Compl. at 33. At this juncture, plaintiff has sufficiently alleged a retaliation claim against Adner to require a response. However, for the reasons set forth in Part V(B) supra , the retaliation claims against Cadwell, Brabart, Bucley, and McAuliff related to the misbehavior report are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted.
3. SHU Confinement
Toliver claims that Cadwell, Brabart, Bucley, and McAuliff conspired to transfer him to the SHU in retaliation for filing complaints related to food. Compl. at 7, 12.
Even assuming Toliver engaged in protected conduct of which defendants were aware, as discussed supra a plaintiff must show that the defendant was personally involved in the alleged constitutional deprivation. As presently pleaded, the complaint lacks facts suggesting that any named defendant was personally involved in plaintiff's disciplinary hearing, the decision to confine him to the SHU, or his appeal of the determination. Accordingly, the retaliation claims based upon the decision to confine plaintiff in the SHU are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted.
K. Violations of 18 U.S.C. §§ 1708 and 1709
To the extent that Toliver attempts to bring criminal charges against defendants pursuant 18 U.S.C. §§ 1708 and 1709, see Compl. at 9, 10, such claims must be dismissed with prejudice. "The law is well settled that no private citizen has a constitutional right to bring a criminal complaint against another individual." DePonceau v. Bush, No. 04-CV-6240, 2004 WL 1574621, at *3 (W.D.N.Y. June 4, 2004) (citing Leeke v. Timmerman , 454 U.S. 83, 85, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981) ); McFarlane v. Roberta, 891 F.Supp.2d 275, 285 (D. Conn. 2012) ( section 1708 of title 18 of the United States Code is a criminal statute, "and it does not appear that Congress intended to create a private, civil cause of action based on its violation.").
L. New York State Constitutional Claims
Toliver claims that defendants violated Article 1, Sections 5 and 12 of the New York State Constitution. See Compl. at 11, 15, 19, 24.
District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a) (2000).
The alleged violations of Article I, Section 5 of the New York State Constitution are parallel to his federal claims for deliberate indifference. Compl. at 13, 14. Because Toliver's federal claims for deliberate indifference are being dismissed, the Court declines to exercise supplemental jurisdiction over those state law claims at this early stage of the case. See *245 28 U.S.C. § 1367(c)(3) ; Valencia v. Sung M. Lee , 316 F.3d 299, 306 (2d Cir. 2003). In the event plaintiff amends the complaint to state a valid claim for deliberate indifference, the Court will exercise jurisdiction over his state law claims.
Further, because Toliver has pleaded a viable Fourth Amendment claim under Section 1983, plaintiff's parallel state law claim is dismissed because there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983. Flores v. City of Mount Vernon , 41 F.Supp.2d 439, 446-47 (S.D.N.Y. 1999).
VI. CONCLUSION
Therefore, it is
ORDERED that
1. Plaintiff's in forma pauperis application (Dkt. No. 2) is GRANTED ;[5]
2. The Clerk shall provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's inmate authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $ 350.00 pursuant to 28 U.S.C. § 1915 ;[6]
3. The Clerk of the Court shall provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office;
4. The following claims are DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) section 1983 claims for monetary damages against defendants in their official capacity; and (2) claims based upon violations of 18 U.S.C. §§ 1708 and 1709 ;
5. The following claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Fourth Amendment claims against Cadwell, Brabart, Bucley, and McAuliff; (2) First Amendment claims related to interference and tampering with legal mail; (3) First Amendment access-to-court claims; (4) conspiracy claims; (5) claims related to the failure to investigate; (6) claims related to violations of DOCCS' Directives and Postal Regulations; (7) Fourteenth Amendment due process claims related to disciplinary confinement; (8) Eighth Amendment claims related to his conditions of confinement; (9) equal protection and discrimination claims; (10) First Amendment retaliation claims based upon mail interference and SHU confinement; and (11) claims pursuant to the New York State Constitution;[7]
6. The following claims survive review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and requires a response: (1) the Fourth Amendment claim against Adner; and (2) the retaliation claim *246 against Adner based upon the misbehavior report;
7. Cadwell, Brabart, Bucley, and McAuliff are DISMISSED as defendants herein;
8. The Clerk shall issue a summons and forward it, along with copies of the Complaint, to the United States Marshal for service upon Adner;
9. The Clerk shall forward a copy of the summons and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order;
10. A response to the Complaint be filed by Adner, or his/her counsel, as provided for in the Federal Rules of Civil Procedure;
11. All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;
12. Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket ;
13. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action;
14. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.;
15. Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action ; and
16. The Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.
IT IS SO ORDERED.

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." Neitzke v. Williams , 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The claims against Brabart, Bucley, McAuliff, and Caldwell are also subject to dismissal for the reasons set forth in Part V(B), supra .

The exhibits annexed to the complaint indicate that plaintiff was sentenced to sixty days in the SHU for violations related to the May 2017 misbehavior report. Compl. at 40.

To the extent Plaintiff relies upon Peoples et. al. v. Annucci, et. al. , 11 Civ. 2694, Opinion and Order (S.D.N.Y. March 31, 2016) to support of his claim, that argument is unpersuasive. The Complaint lacks facts suggesting that Plaintiff was confined in the SHU for "an extraordinary amount of time." But see Peoples , 2012 WL 1575302, at *9 (allowing the plaintiff to proceed with Eighth Amendment claims holding that "three years in the SHU is an extraordinary amount of time."). As presently plead, the facts imply that the longest continuous sentence Plaintiff served in the SHU was four months. See Compl., generally .

Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

"Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." Cash v. Bernstein , No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b) and Harris v. City of New York , 607 F.3d 18, 21 (2d Cir. 2010) ).

If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.