B.D. PARKER, J., delivered the opinion of the Court, in which WALLACE and HALL, JJ., joined. HALL, J., filed a concurring opinion, in which B.D. PARKER, J., joined.
B.D. PARKER, Circuit Judge:
Plaintiff-appellant, JS, formerly a participant in the Justice Department’s Witness Security Program (“the Program”), brings this action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging that he was terminated from the Program without being afforded procedural due process. JS also alleges that following his termination he was placed in a Segregated Housing Unit (“SHU”) for 188 days and that this confinement violated due process and constituted cruel and unusual punishment. The United States District Court for the Southern District of New York (Buchwald, J.), relying on United States v. Gigante, 187 F.3d 261 (2d Cir.1999), held that it lacked subject matter jurisdiction over JS’s termination claim and, without reaching the sufficiency of his solitary confinement claims, sua sponte dismissed the complaint. We AFFIRM the district court’s dismissal of JS’s due process claim with regard to his termination from the Program. However, we REMAND to permit JS to replead with respect to his confinement in the SHU.
*102 BACKGROUND
The following facts are drawn from the complaint, the allegations of which, at this stage, we accept as true. See Gonzalez v. Hasty, 651 F.3d 318, 321 (2d Cir.2011). JS is a federal prisoner who was incarcerated at the Federal Correctional Institution (“F.C.I.”) Otisville and who participated in the Program from December 2007 until March 2010. JS’s participation was governed by a Witness Security Program Prisoner-Witness Agreement (the “written agreement”) and a Memorandum of Understanding (“MOU”) between JS and the Department of Justice.
The Attorney General has “broad discretion to administer” the Program. Doe v. Civiletti, 635 F.2d 88, 97 (2d Cir.1980); see also Bergmann v. United States, 689 F.2d 789, 793 (8th Cir.1982). This discretion is reflected throughout the governing statute. Whether or not a witness will be protected under the program is within the Attorney General’s discretion. Abbott v. Petrovsky, 717 F.2d 1191, 1193 (8th Cir.1983); see also 18 U.S.C. § 3521(a)(1) (“The Attorney General may provide for the relocation and other protection of a witness or a potential witness.” (emphasis added)). Once a witness is admitted, the type and level of protection afforded is also within the Attorney General’s discretion, and may continue for as long as, in the judgment of the Attorney General, the danger to that person exists. 18 U.S.C. § 3521(b)(1). An individual’s participation in the Program is voluntary, and an individual who joins is free to leave at any time. Hertzke v. Riley, 715 F.Supp. 117, 120 (E.D.Pa.), aff'd, 891 F.2d 281 (3d Cir.1989).
Rule 2b of the written agreement provides that contacting or attempting to' contact unauthorized individuals constitutes a breach of the agreement. The MOU provides a similar prohibition on unauthorized contacts. The written agreement states that “[fjailure to adhere to this Agreement could result in termination of Program services without notice ” (emphasis in original). Neither the MOU nor the written agreement sets forth the procedures to be followed in the event the Justice Department’s Office of Enforcement Operations (“OEO”) recommends termination.
In October 2009, the OEO notified JS that it was aware that he had made contact with unauthorized individuals in violation of Rule 2b. On March 9, 2010, the OEO sent JS a termination notice, stating that he had again violated Rule 2b by having unauthorized contacts with unauthorized individuals. The notice instructed JS on how to appeal his termination.
On March 11, 2010, JS filed a Notice of Appeal contending that his termination violated due process because OEO had failed to inform him of whom he was alleged to have contacted. He also contended that, because all his contacts had been approved by staff persons at the institution, he could not have violated the agreement. Louis Scialabba, a counselor at Otisville, reviewed the appeal and forwarded it to OEO with a recommendation that the termination be finalized. JS also wrote to Eileen Ruleman, Chief of OEO, on March 21 expressing his frustration at having been terminated without first being told the factual basis for the termination. OEO received that letter on April 3, 2010.
The record does not indicate that the OEO received JS’s March 11 Notice of Appeal, and its written disposition suggests that OEO had received only JS’s March 21 letter. That letter did not state the basis for his appeal but merely expressed his displeasure with having been terminated from the Program. OEO concluded that JS had failed to articulate a ground for appeal and affirmed his termi *103 nation, finding that he had initiated contact on multiple occasions with unauthorized individuals.
On April 19, 2010, Donna Hill, a unit manager at Otisville, gave JS a copy of an order from Stephen T’Kach, Director of OEO, denying the appeal. JS then complained to Hill that OEO had failed to explain the factual basis for the allegations that led to his termination. Hill responded, “OEO doesn’t have to go by the same rules as everybody else. They don’t have to tell you what you did, you know what you did.” Hill then instructed JS to initial T’Kach’s order. Immediately upon his initialing the order, prison officials placed JS in the SHU, where he was held for 188 days. In December 2010, JS initiated this Bivens action against T’Kach, Ruleman, OEO Coordinator Jennifer Segui, Hill, and Scialabba in their individual capacities alleging that his termination and placement in segregated housing violated his rights under the Fifth and Eighth Amendments.
In February 2011, prior to a responsive pleading, the district court sua sponte dismissed the complaint. The district court held that in light of 18 U.S.C. § 3521(f) which provides that “[t]he decision of the Attorney General to terminate [a witness’s] protection [under the Program] shall not be subject to judicial review,” the court lacked subject matter jurisdiction over JS’s due process claim. The court also ruled that the complaint otherwise failed to state a claim on which relief could be granted.[2] This appeal followed.
DISCUSSION
We review a district court’s sua sponte dismissal of an action and its complaint de novo. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir.2004). The complaint must plead “enough facts to state a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Where, as in this case, the plaintiff is proceeding pro se, the district court must construe the complaint liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests. Harris v. City of New York, 607 F.3d 18, 24 (2d Cir.2010). Moreover, district courts generally should not dismiss a pro se complaint without granting the plaintiff leave to amend. See Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir.2009); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000).
A. Termination from the Program
JS alleges that his participation in the Program constituted a property interest and that he was wrongly deprived of that interest because he was not afforded an opportunity to meaningfully challenge the OEO’s decision to terminate him. Specifically, he contends that because he was not informed of the factual basis supporting the termination until after his appeal was denied, he could not properly appeal the termination and the district court erred in concluding that it lacked *104 jurisdiction to review his claims.[3] We disagree.
The Program is governed by 18 U.S.C. § 3521, which the government argues, and the district court held, deprives federal courts of jurisdiction to consider JS’s challenge to his termination. As noted, section 3521(f) provides that the Attorney General’s decision to terminate protection is not subject to judicial review. Because subject-matter jurisdiction is “a tribunal’s power to hear a case,” Morrison v. Nat'l Australia Bank Ltd., - U.S. -, 130 S.Ct. 2869, 2877, 177 L.Ed.2d 535 (2010) (internal quotation marks omitted), this provision leaves a district court without power or discretion to hear challenges to Program terminations. See. Gigante, 187 F.3d at 262 (holding that a districtcourt is “without jurisdiction to consider” challenges to Program terminations).
, Even though this provision is clear and resort to legislativé history is not required, we note that Congress’s intention to bar judicial review of terminations and the process through which termination decisions are reached is clearly reflected in the legislative history of § 3521. The original draft of the section, found in H.R. 7039, contained a provision permitting judicial review of the Attorney General’s decision to terminate a witness from the Program and of whether the Attorney General had breached the MOU. The initial bill would have allowed the witness to apply for a hearing “to contest the proposed termination of protection to the United States district court” and would have required the Attorney General to provide the witness with notice of the right to request such a hearing. Marshals Service of Process: Hearings Before the Subcomm. on Courts, Civil Liberties, and the Admin, of Justice of the H. Comm, on the Judiciary, 97th Cong., 2d Sess. 8-9 (1982). The bill also provided for a hearing before a magistrate judge to “determine whether or not a substantial breach of the [MOU had] occurred.” Id. at 8. The Program participant would have then had the right to appeal the magistrate judge’s ruling to a district court under a “substantial evidence” standard of review. If the district court determined that the Attorney General had breached the MOU, it would have been authorized to grant injunctive or other appropriate relief. The DOJ opposed the judicial review provisions in the original bill. Id. at 184-85 (Testimony of Rudolph W. Giuliani, Associate Attorney General, Department of Justice). A revised provision, proposed in H.R. 4249, eliminated the judicial review proposed in H.R. 7039 and is identical, in relevant part, to the version of § 3521(f) now in force. Compare Witness Protection Act: Hearing Before the Subcomm. on Courts, Civil Liberties, and the Admin, of Justice of the H. Comm, on the Judiciary, 98th Cong., 1st Sess. 202, subsection (e) (1983) with 18 U.S.C. § 3521(f).
This background demonstrates that Congress intended to bar the courts from reviewing the, OEO’s decision to terminate participants in the Program. To the extent JS sought such review, his claim was appropriately dismissed. But rather than challenging his termination directly, JS styles his claim as a due process challenge to the OEO defendants’ purported failure to provide him notice of the basis for his termination and a fair opportunity to contest the allegations of Program violations. In this regard he maintains that nothing in § 3521 bars the. Courts from considering *105 suits grounded in due process against federal officials who deprive participants of the pre-termination procedural protections authorized by the statute.
As a general matter, where Congress exempts a class of governmental determinations from judicial review, the courts do not acquire jurisdiction to hear challenges to the benefits determinations merely because those challenges are cloaked in constitutional terms. Sugrue v. Derwinski, 26 F.3d 8, 11 (2d Cir.1994); see also Pappanikoloaou v. Adm’r of Veterans Admin., 762 F.2d 8, 9 (2d Cir.1985) (per curiam) (“[0]ne may not circumvent [a congressional bar to judicial review] by seeking damages on a constitutional claim arising out of a denial of benefits”) (collecting cases). At the same time it is true that “ Where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear.’ ” Elgin v. Dep’t of the Treasury, - U.S. -, 132 S.Ct. 2126, 2132, 183 L.Ed.2d 1 (2012) (quoting Webster v. Doe, 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988)). Despite the congressional bar to direct judicial review of termination from the Program, we have never reached the possibility that, under some circumstances, “an individual’s termination from the Program could form the basis for a claim in a substantive or procedural context.” Gigante, 187 F.3d at 262. We now turn to one such possibility: does JS’s procedural due process claim survive § 3521(f)’s bar?
To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process. Ahlers v. Rabinowitz, 684 F.3d 53, 62 (2d Cir.2012). In order to do this, a plaintiff must “first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.” Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir.1994) (internal quotation marks omitted). The plaintiff need not prove that he would have ultimately been successful if afforded the process he claims is due; he need demonstrate only that he was deprived of adequate process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S, 532, 544, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
JS does not meet this test. He is unable to show that he has been deprived of a property right for which process is due because “a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.” Town of Castle Rock v. Gonzales, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). As we have seen, under § 3521(a)(1) the Attorney General has broad discretion whether to provide protection. Even after a witness is admitted, the type and level of protection is within the Attorney General’s discretion and may continue “for as long as, in the judgment of the Attorney General, the danger to that person exists.” 18 U;S.C. § 3521(b)(1). Further, while § 3521(f) states that the “Attorney General may terminate” a participant from the Program for certain enumerated reasons, the statute does not prohibit termination for other reasons. Because Congress did not create a protectable property interest in participation in the Program, the district court correctly dismissed JS’s procedural due process claim.
B. ■ Placement in SHU
Next JS challenges the dismissal of his claim that his detention in segregated housing for 188 days violated .his Fifth Amendment and Eighth Amendment rights. The government counters that JS did not fully advance these allegations in *106 his complaint and, to the extent that he did, the detention was a discretionary administrative detention derivative of his termination from the Program and therefore also not subject to judicial review. The district court did not address this claim.
We have held that a prisoner has a liberty interest'that is implicated by SHU confinement if it “imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); see also Palmer v. Richards, 364 F.3d 60, 64 (2d Cir.2004). In this regard, we consider, among other things, the duration and conditions of confinement. Davis v. Barrett, 576 F.3d 129, 133 (2d Cir.2009). In the absence of factual findings to the contrary, confinement of 188 days is a significant enough hardship to trigger Sandin. See Palmer, 364 F.3d at 65-66 (“In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than [ ] 30 days .... ”); see also Davis, 576 F.3d at 135 (remanding for fact-finding concerning 55-day SHU confinement); Reynoso v. Selsky, 292 Fed.Appx. 120, 123 (2d Cir.2008) (remanding for fact-finding concerning 150-day SHU confinement because SHU confinements “between 101 and 305 days ... require a district court to articulate specific findings of the conditions of the imposed confinement relative to ordinary prison conditions before determining whether such confinement is atypical” and trigger Sandin.); Arce v. Walker, 139 F.3d 329, 335-36 (2d Cir.1998) (affirming dismissal of claim concerning 18 days in SHU).
The government contends that JS’s confinement was administrative and not punitive ini nature. But the record is devoid of any explanation as to why JS was confined to SHU for that period. No one contends that § 3521(f) would permit the government to visit significant, unreviewable punishment on an inmate after his termination from the Program. Thus, without factual findings to the contrary, we have little difficulty concluding that JS’s allegation of 188 days of administrative confinement is sufficient to implicate Sandin-type liberty interests. See Davis, 576 F.3d at 135; Reynoso, 292 Fed.Appx., at 123. Because JS has alleged facts with regard to his SHU confinement on which he could plead a Fifth Amendment claim, the district court erred when it dismissed the claim sua sponte. See Sealey v. Giltner, 116 F.3d 47, 52 (2d Cir.1997) (“[W]e have indicated the desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement.”). JS should be given leave to replead this claim.
On appeal, JS further contends that his confinement was not merely administrative but was punitive because it was intended to punish his breach of the Program agreement' and thus violated the Eighth Amendment’s prohibition on cruel and unusual punishment. His complaint, however, does not allege that the detention was punitive in nature. On remand, the district court should grant leave to replead this claim and then assess its sufficiency. We intimate no position on the merits of these claims.
CONCLUSION
The district court properly dismissed JS’s claim concerning his termination from the Program. However, with respect to SHU detention, the district court should have sua sponte granted JS leave to re-plead before sua sponte dismissing the complaint. Accordingly, we AFFIRM in part and VACATE the judgment in part and REMAND for further proceedings.

. After he appealed, JS moved for the appointment of counsel. We granted the motion. We instructed appointed counsel to brief whether the district court erred in: (1) sua sponte dismissing JS’s procedural due process claim challenging the process by which he was terminated from the Program, pursuant to 18 U.S.C. § 3521(f), and additionally, whether dismissal of that claim was required under § 3521(a)(3); (2) sua sponte dismissing, without addressing, JS’s claim that the OEO violated his rights when it placed him in segregation for 188 days, insofar as that claim arises under either the Fifth or Eighth Amendments; and/or (3) sua sponte dismissing the complaint without leave to re-plead.

. JS does not appeal the dismissal of his Eighth Amendment claim concerning his termination from the Program.