**17-3682(L)**
*Kirschenbaum v. Assa Corp.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term 2018

(Argued: May 1, 2019 | Decided: August 9, 2019)

Docket Nos. 17-3682(L), 17-3599(Con), 17-3603(Con), 17-3604(Con),
17-3620(Con), 17-3627(Con), 17-3629(Con), 17-3632(Con),
17-3638(Con), 17-3642(Con), 17-3650(Con), 17-3663(Con),
17-3667(Con), 17-3673(Con), 17-3677(Con), 17-3687(Con)

JASON KIRSCHENBAUM, ET AL.,

*Plaintiffs-Appellees*,

v.

ASSA CORPORATION, ASSA CO. LTD.,

*Defendants-Appellants*,

650 FIFTH AVENUE COMPANY, ALAVI FOUNDATION,

*Defendants*.
_____

Before:
    PARKER, WESLEY, and CHIN, *Circuit Judges*.

These consolidated appeals ask whether two corporations ("Assa") must turn over substantial real and financial property interests to hundreds of terrorism victims holding default judgments against the Islamic Republic of Iran. The victims allege that Assa should be treated as the "foreign state" of Iran under

several provisions of the Foreign Sovereign Immunities Act and as a "terrorist party" under § 201 of the Terrorism Risk Insurance Act. On summary judgment, the United States District Court for the Southern District of New York (Forrest, *J.*) ordered the turnover of Assa's property under both statutes. We **AFFIRM**.

_____

PATRICK N. PETROCELLI, Stroock & Stroock & Lavan LLP, New York, NY (James L. Bernard, Curtis C. Mechling, Pamela S. Takefman, Stroock & Stroock & Lavan LLP, New York, NY; Liviu Vogel, Salon Marrow Dyckman Newman & Broudy LLC, New York, NY; Timothy B. Fleming, Wiggins Childs Pantazis Fisher Goldfarb PLLC, Washington, DC; Ralph P. Dupont, Barbara J. Dupont, Dupont Law Firm LLP, Stamford, CT; Dale K. Cathell, Richard M. Kremen, DLA Piper LLP (US), Baltimore, MD; Peter R. Kolker, Zuckerman Spaeder LLP, Washington, DC; Anant Kumar, Zuckerman Spaeder LLP, New York, NY, *on the brief*), *for Plaintiffs-Appellees*.

PETER I. LIVINGSTON, Anderson Kill, P.C., New York, NY (Deborah B. Koplovitz, Anderson Kill, P.C., New York, NY; Donald F. Luke, Marjory T. Herold, Jaffe and Asher LLP, New York, NY, *on the brief*), *for Defendants-Appellants*.

_____

WESLEY, *Circuit Judge*:

Over the past few decades, hundreds of terrorism victims have obtained default judgments against the Islamic Republic of Iran in federal court. Iran has yet to satisfy these judgments, and the victims have returned to the courts seeking to execute their judgments through the attachment of Iranian assets

located within the United States. Among these individuals are the hundreds of Plaintiffs-Appellees in these consolidated appeals (the "Judgment Creditors"). In the actions below, the Judgment Creditors sued Assa Corporation and Assa Co. Ltd. (collectively, "Assa"), alleging that Assa is sufficiently close to Iran that its assets are subject to attachment and execution under the Foreign Sovereign Immunities Act ("FSIA") and the Terrorism Risk Insurance Act ("TRIA"). The United States District Court for the Southern District of New York (Forrest, *J.*) granted summary judgment to the Judgment Creditors on their claims under both statutes. The court ordered Assa to turn over substantial property interests, including its stake in 650 Fifth Avenue (the "Building"), a 36-story commercial skyscraper in Midtown Manhattan. *See In re 650 Fifth Ave. & Related Props.*, No. 08 Civ. 10934 (KBF), 2014 WL 1516328 (S.D.N.Y. Apr. 18, 2014).

On appeal, Assa argues that the district court erroneously exercised subject matter jurisdiction under both the FSIA and TRIA upon finding that it is a foreign state under the FSIA and a terrorist party under TRIA. It also argues that the court erroneously concluded that its property is subject to attachment and execution under the FSIA and TRIA.

As to both statutes, we hold that the district court has jurisdiction and that Assa's property is subject to attachment and execution. Accordingly, we affirm.

**BACKGROUND**

### A. The Parties

The Judgment Creditors are direct and indirect victims of terrorist attacks linked to the Islamic Republic of Iran. *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 117 (2d Cir. 2016), *abrogated in part by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018). The stories giving rise to each of their claims are heart-wrenching, but the relevant fact for the purpose of these appeals is that these individuals all have unsatisfied judgments for money damages against Iran.[1]

Assa Corporation is a New York corporation formed in 1989. It is wholly owned by Assa Co. Ltd., a corporation formed in Jersey, Channel Islands.[2] Both

---

[1] Unless otherwise noted, the resolution of the Judgment Creditors' claims turns on the same analysis. One exception is that some Judgment Creditors pursued relief under either the FSIA or TRIA, but not both statutes. Thus, while this opinion speaks of the Judgment Creditors collectively, it does so with the caveat that, at times, the term "Judgment Creditors" refers only to those Judgment Creditors who pursued the claim under discussion.

[2] While Assa disputes the district court's control finding, we have previously concluded, and confirm later in this opinion, that the record demonstrates "as a matter

entities are ultimately owned and controlled by Bank Melli, which is owned by the Government of Iran. *See id.* at 118. Among other properties and interests spread throughout the United States, Assa owns 40% of 650 Fifth Ave. Co., a real estate partnership that owns the Building. Assa's partner, the Alavi Foundation, owns the remaining 60%.

### B. Litigation History

The Judgment Creditors began filing the turnover lawsuits giving rise to these appeals in December 2008, shortly after the United States initiated a civil-forfeiture action against Assa's property interests. Their complaints allege that Assa, through its connections to Iran, is a "foreign state" under the FSIA and a "terrorist party" under TRIA. Under both statutes, the Judgment Creditors seek to enforce their judgments against Iran through the attachment and execution of Assa's real and financial property interests.

In 2010, the United States District Court for the Southern District of New York (Holwell, *J.*) consolidated these actions for pretrial purposes. In 2012, the Southern District reassigned the cases to Judge Forrest.

---

of law that Bank Melli owned and controlled Assa even after 1995." *Id.* at 136; *see also In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 93 (2d Cir. 2016).

In June 2013, the district court granted certain Judgment Creditors' motions for partial summary judgment on their TRIA claims. It held that Assa's property constituted "blocked assets" under TRIA, which meant the property was subject to attachment and execution. Soon after, the Judgment Creditors moved for summary judgment and turnover of properties belonging to Assa, Alavi, and 650 Fifth Ave. Co. on their FSIA and TRIA claims. The district court granted the motion.

Much of the summary judgment opinion focused on whether the district court had subject matter jurisdiction under the FSIA and TRIA. The court concluded on two alternative grounds that it did. First, it held that Assa could be treated as Iran itself, which suffices for jurisdiction under both statutes. *See In re 650 Fifth Ave.*, No. 08 Civ. 10934 (KBF), 2014 WL 1516328, at *10–11 (citing 28 U.S.C. § 1603(a)). Second, it held that Assa is Iran's alter ego and could therefore be treated as Iran under equitable principles outlined in *First National City Bank v. Banco Para El Comercio Exterior de Cuba* (*Bancec*), 462 U.S. 611 (1983), *superseded in part by statute as stated in Rubin*, 138 S. Ct. 816.[3] *Id.* at *12.

---

[3] For a discussion of how *Rubin* affects *Bancec*, see note 5, *infra*.

Even where a court has jurisdiction over a turnover action involving a foreign state, the FSIA makes "the property in the United States of a foreign state . . . immune from attachment arrest and execution [subject to certain exceptions]." 28 U.S.C. § 1609. The court found that four attachment-immunity exceptions applied here: three in the FSIA, 28 U.S.C. §§ 1610(a)(7), 1610(b)(3), and 1610(g), and one in § 201 of TRIA, codified at 28 U.S.C. § 1610 note. *In re 650 Fifth Ave.*, No. 08 Civ. 10934 (KBF), 2014 WL 1516328, at \*14–21.

Alavi and 650 Fifth Ave. Co.—but not Assa—moved for final judgment as to their property interests. *See Kirschenbaum*, 830 F.3d at 117 n.1, 122. On appeal, we vacated the judgment as it applied to those parties and remanded for further proceedings. *See id.* at 117.[4] Our holding did not apply to Assa, as it did not participate in the appeal. *Id.* at 117 n.1.

---

[4] In 2018, the Supreme Court abrogated our decision to the limited extent that it treated FSIA § 1610(g) as a freestanding exception to attachment immunity. *See Rubin*, 138 S. Ct. at 816, 827. Instead, the Court held, § 1610(g) "operates only when the property at issue is exempt from immunity as provided elsewhere in § 1610." *Id.* at 820. This holding has no bearing on the issues currently before us.

After Alavi and 650 Fifth Ave. Co. took their cases to trial, the district court entered final judgment resolving all claims for all parties. As was its right, Assa appealed from the then-final summary judgment at that time.

## DISCUSSION

"We review a district court's grant or denial of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 34 (2d Cir. 2005). "Summary judgment is only appropriate if, based on the pleadings and evidentiary submissions, there is no genuine material issue of fact and the moving party is entitled to judgment as a matter of law." *Id.*

### I. The District Court Had Subject Matter Jurisdiction Under the FSIA Because Assa Is an Alter Ego of Iran.

The FSIA does not formally define the term "foreign state." Instead, it explains that a "foreign state" "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).

Our precedent analyzing the FSIA establishes at least four bases for finding that an entity is a "foreign state" under the statute. First, an entity can be a "foreign state" because it is an actual foreign state under the ordinary meaning

8

of that term. *See Kirschenbaum*, 830 F.3d at 123. Second, an entity can be a "foreign state" if it is an alter ego of a foreign state. *See id.* at 129 (citing *Bancec*, 462 U.S. at 629).[5] Third, an entity can be a "political subdivision" of a foreign state, a term the FSIA does not define. And fourth, an entity can be an "agency or instrumentality" of a foreign state as defined in 28 U.S.C. § 1603(b).

Neither Assa Corporation nor Assa Co. Ltd. is an actual foreign state under the ordinary meaning of that term. A foreign state is "an entity bearing the

---

[5] The Supreme Court noted in *Rubin v. Islamic Republic of Iran* that § 1610(g) "abrogate[d] *Bancec* with respect to the liability of agencies and instrumentalities of a foreign state where a [terrorism-related] judgment holder seeks to satisfy a judgment held against the foreign state." 138 S. Ct. at 823. This is a case where plaintiffs holding terrorism-related judgments seek to satisfy a judgment held against a foreign state. However, § 1610(g) does not abrogate *Bancec* as we apply it here.

First, this is not a case where the plaintiffs seek recovery against a foreign state's "agencies or instrumentalities." As we hold below, Assa does not meet the FSIA's definition of that term. Second, *Rubin* and § 1610(g) appear to contemplate a case where an entity already subject to FSIA jurisdiction tries to use corporate separateness as a shield against property attachment. In other words, they are concerned with the question of property immunity. Here, we are concerned with the upstream question of whether the entity that possesses the property at issue (Assa) is subject to FSIA jurisdiction at all. We do not understand *Rubin* or § 1610(g) to address that question or foreclose courts from using *Bancec* to answer it. *See id.* at 823 ("The issue at hand is whether § 1610(g) . . . allows a [terrorism-related] judgment holder to attach and execute against *any* property of the foreign state, regardless of whether the property is deprived of immunity elsewhere in § 1610."); 28 U.S.C. § 1610(g) (appearing in a section titled "Exceptions to the immunity from attachment or execution" and describing property immunity without commenting on jurisdiction over the defendant).

'attributes of statehood,' which include a defined territory and population, self-governance and foreign relations, and the capacity to wage war and enter into international agreements." *Id.* at 123 (quoting *Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 924 F.2d 1237, 1243–44 (2d Cir. 1991)). The Assa entities are corporations, not sovereigns. The district court erroneously held that they were foreign states based on definitions of the "Government of Iran" taken from an executive order and federal regulations, a reading we held was erroneous in our resolution of the interlocutory appeals of Alavi and 650 Fifth Ave. Co. *See id.* at 123–25.

Nor is either Assa entity an "agency or instrumentality" of a foreign state as the FSIA defines that term. Under 28 U.S.C. § 1603(b)(3), an agency or instrumentality must be "neither a citizen of a State of the United States as defined in [28 U.S.C. §§ 1332(c) and (e)], nor created under the laws of any third country." Assa Corporation is a citizen of a state (New York) within the meaning of § 1332(c), and Assa Co. Ltd. is incorporated under the laws of a third country (Jersey, Channel Islands).

The parties have not adequately briefed the issue of whether Assa is a "political subdivision" of Iran. We need not decide this question, however,

10

because *Bancec*'s alter-ego principles offer a simpler ground for treating Assa as the foreign state of Iran.

In *Bancec*, the Supreme Court recognized the "broader equitable principle that the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice." 462 U.S. at 629 (citation omitted). In our decision resolving the interlocutory appeals of Alavi and 650 Fifth Ave. Co., *Kirschenbaum v. 650 Fifth Avenue and Related Properties*, we explained that courts may use *Bancec*'s alter-ego theory to treat an entity as a foreign state under the FSIA. 830 F.3d at 128–29 (citing *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 199 F.3d 94 (2d Cir. 1999) (per curiam)). To do so, a court must conclude as a matter of law that "(1) the instrumentality 'is so extensively controlled by its owner that a relationship of principal and agent is created,' or (2) the recognition of an instrumentality's separate legal status would work a 'fraud or injustice.'" *Id.* at 128 (quoting *Bancec*, 462 U.S. at 629). As the district court made no finding on "fraud or injustice," we focus on extensive control.

The "touchstone inquiry for extensive control is whether the sovereign state exercised significant and repeated control over the instrumentality's day-to-

11

day operations." *Id.* at 129–30 (quoting *EM Ltd. v. Banco Central de la Republica Argentina*, 800 F.3d 78, 91 (2d Cir. 2015)) (quotation marks and brackets omitted). Five factors are relevant to the "extensive control" inquiry:

> whether the sovereign nation: (1) uses the instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state.

*Id.* at 130 (quoting *EM Ltd.*, 800 F.3d at 91).

This test is easily met here. *Kirschenbaum* held that the same record "demonstrates as a matter of law that Bank Melli owned and controlled Assa even after 1995." *Id.* at 136.[6] Although Assa was not a party to that appeal and is not bound by this finding, none of its arguments persuade us to reach a contrary conclusion. Both Assa entities are owned and controlled by Iran. They are Iran's alter egos as a matter of law and are therefore foreign states under the FSIA.

---

[6] *See also In re 650 Fifth Ave.*, 830 F.3d at 93 ("In sum, the record evidence convincingly demonstrates that Bank Melli, and therefore the Government of Iran, continued to control Assa after 1995, and admits no genuine issue of triable fact on that question.").

Assa does not challenge the district court's holding that, as a foreign state's alter ego, it lacks immunity under 28 U.S.C. § 1605A of the FSIA. Nor does Assa argue that its property is immune from attachment and execution under 28 U.S.C. § 1610 of the FSIA. Assa has thus waived these arguments, and our task is complete. Under the FSIA, Assa is subject to the district court's jurisdiction and its property is subject to attachment and execution. We affirm the judgment on the FSIA claims.[7]

## II. The District Court Had Subject Matter Jurisdiction Under TRIA Because Assa Is Both an Alter Ego and Agency or Instrumentality of Iran and Its Property Constitutes Blocked Assets.

That leaves TRIA. Section 201 of the statute provides:

Notwithstanding any other provision of law, . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section [28 U.S.C. §§ 1605A or 1605(a)(7)], the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

---

[7] However, we vacate the district court's holding that Assa's property was exempt from attachment immunity under FSIA § 1610(g). As noted above, § 1610(g) is not a freestanding attachment-immunity exception. *See Rubin*, 138 S. Ct. at 816, 827.

13

TRIA § 201(a). To attach Assa's property under TRIA, the Judgment Creditors must show that (1) Assa is a "terrorist party," and (2) its assets are "blocked assets."

### A. Terrorist Party

A "terrorist party" is "a terrorist, a terrorist organization . . . , or a foreign state designated as a state sponsor of terrorism." *Id.* § 201(d)(4). The Judgment Creditors hold their judgments against Iran, which is a state sponsor of terrorism for TRIA purposes. *See Kirschenbaum*, 830 F.3d at 131–32 (citing 49 Fed. Reg. 2836-02). As the Judgment Creditors obtained their judgments against a terrorist party, the question is whether Assa can be treated as Iran under TRIA. It can.

*First*, for the same reasons noted above, Assa is the alter ego of Iran. *Kirschenbaum* did not decide whether *Bancec*'s equitable principles allow us to look past the corporate form in TRIA actions. But we see no reason why they should not. *Bancec* makes clear that courts need not "adhere blindly to the corporate form" where doing so would ignore a foreign state's principal-agent relationship or lead to fraud or injustice. *See* 462 U.S. at 632. These concerns are as relevant in TRIA actions as they are in FSIA actions. We therefore hold that the

14

alter ego of a terrorist party qualifies as a "terrorist party" under TRIA. As Iran's alter ego, Assa is a terrorist party.

*Second*, Assa is an "agency or instrumentality" of Iran under TRIA § 201(a). *Kirschenbaum* explained that an entity can be an agency or instrumentality of a terrorist party for TRIA purposes in three ways: the entity "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, *or* (3) was owned, controlled, or directed by the terrorist party." 830 F.3d at 135.[8]

Under the third *Kirschenbaum* factor, Assa is an agency or instrumentality of Iran because there is no material factual dispute that it is owned, controlled, and directed by Iran. As we concluded both above and in *Kirschenbaum*, "the

---

[8] *Kirschenbaum* also noted, but did not decide, a possible additional requirement: that a TRIA plaintiff must show that the defendant "knew, or reasonably should have known, that they were functioning for, providing material services on behalf of, or being owned, controlled, or directed by the terrorist party." *Id.* at 136. Similarly, it noted without deciding that an agency or instrumentality may be able to rely on an innocent-owner defense. *Id.*

record demonstrates as a matter of law that Bank Melli owned and controlled Assa even after 1995." *Id.* at 136.[9]

We recognize that the *Kirschenbaum* factors are silent on whether, and if so to what extent, an agency or instrumentality of a terrorist party must have played some role in furthering the terrorist party's criminal wrongdoing. We have little doubt that Congress intended that TRIA give terrorism victims an easier path to recovery than the FSIA provides against a state sponsor of terrorism's agencies or instrumentalities. *Kirschenbaum* reflects this purpose by recognizing that TRIA's definition of "agency or instrumentality" is less restrictive than the FSIA's. *See id.* at 133–34.[10] But it is possible that, if broadly construed, *Kirschenbaum*'s reading of TRIA could invite lawsuits against a third-party institution, such as a bank, that had only incidental and perhaps unintentional involvement with a terrorist party. How TRIA balances these

---

[9] We decline to decide whether TRIA has a knowledge requirement or an innocent-owner defense. It is abundantly clear from the record that Assa knew of its Iranian ownership via Bank Melli. Thus, any defense of ignorance or innocent ownership would not apply here.

[10] *See also* H.R. Conf. Rep. No. 107-779, at 27 (2002); Recent Case, Kirschenbaum v. 650 Fifth Ave. & Related Props., 130 Harv. L. Rev. 1257, 1263–64 (2017).

concerns is not an issue before us at this time, as a terrorist party's alter ego cannot argue that it lacks a nexus to its principal's wrongdoing.

### B. Blocked Assets

Under TRIA, "the blocked assets of [a] terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment." TRIA § 201(a). TRIA § 201(d)(2) defines "blocked asset," but we need not explore that definition here. In *Kirschenbaum*, we held that "all assets belonging to an entity that satisfies Executive Order 13,599's definition of 'Government of Iran' are automatically blocked." 830 F.3d at 137. Accordingly, all we must decide is whether Assa is the "Government of Iran" under Executive Order 13,599. *See id.* at 141.[11]

The Executive Order defines the "Government of Iran" as "the Government of Iran, any political subdivision, agency, or instrumentality thereof, including the Central Bank of Iran, and any person owned or controlled by, or acting for or on behalf of, the Government of Iran." Exec. Order No. 13,599, 77 Fed. Reg. 6659, 6660 (Feb. 5, 2012).

---

[11] For a background on Executive Order 13,599, see *id.* at 119–21.

We concluded above that Assa is both owned and controlled by the Government of Iran through Bank Melli. We therefore hold that Assa is considered the Government of Iran under the Executive Order. Its property thus constitutes blocked assets subject to attachment and execution under TRIA.

Assa's only argument to the contrary is that the district court should not have reached this issue without first allowing Assa to seek certain discovery from the Department of Treasury's Office of Foreign Assets Control. Assa has not explained how this discovery would have made any difference to the district court's decision. As we already concluded that there is no disputed question of material fact over whether Iran owned and controlled Assa, we find that any error in denying Assa's discovery request, if error at all, was harmless.

\* \* \*

As Assa is both an alter ego and an agency or instrumentality of a terrorist party under TRIA, and the property at issue constitutes blocked assets, the district court correctly held that Assa's property is subject to attachment and execution under § 201.

## CONCLUSION

We **AFFIRM** the judgment of the district court.