21-1102-cv
*Gentleman v. State Univ. of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of May, two thousand twenty-two.

PRESENT:
>RICHARD C. WESLEY,
>JOSEPH F. BIANCO,
>MYRNA PÉREZ
>>*Circuit Judges*.

---

Molly M. Gentleman,

>*Plaintiff-Appellant*,

>v.                                                     21-1102-cv

State University of New York Stony Brook

>*Defendant-Appellee*,

Michael Dudley, Chadrani Roy, Jason Trelewicz, Alexander Orlov,

>*Defendants*.*

---

FOR PLAINTIFF-APPELLANT:          LOCKSLEY O. WADE, Locksley O. Wade, LLC, New York, NY.

---

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

FOR DEFENDANT-APPELLEE: BLAIR J. GREENWALD, Assistant Solicitor General of Counsel (Barbara D. Underwood, Solicitor General, Steven C. Wu, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, New York, NY.

Appeal from the orders and judgment of the United States District Court for the Eastern District of New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders and judgment of the district court are **AFFIRMED**.

Plaintiff-appellant Dr. Molly M. Gentleman ("Gentleman"), a former professor at defendant-appellee State University of New York Stony Brook ("SUNY Stony Brook"), appeals from November 21, 2016 and June 6, 2017 orders of the Eastern District of New York (Spatt, *J.*) granting SUNY Stony Brook's motion to dismiss, *inter alia*, Gentleman's procedural due process claim, and a March 31, 2021 order and judgment (Tomlinson, *M.J.*),[1] granting SUNY Stony Brook's motion for summary judgment as to the remaining claims.

Gentleman was hired for a three-year term position as a research engineer and member of the faculty in the Department of Materials Science and Engineering of SUNY Stony Brook from September 1, 2012 to August 31, 2015. In 2014, SUNY Stony Brook decided not to renew Gentleman's contract. Following the school's decision, Gentleman brought various claims under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, and the

---

[1] The parties consented to the jurisdiction of Magistrate Judge Tomlinson to enter a final order with respect to the motion for summary judgment.

Civil Rights Act of 1871 ("Civil Rights Act"), 42 U.S.C. § 1983, alleging that SUNY Stony Brook and the individual defendants discriminated against her in this adverse employment action due to her alleged bipolar disorder. On appeal, Gentleman argues that the district court erred in: (1) dismissing her Section 1983 due process claim under Federal Rule of Civil Procedure 12(b)(6); and (2) granting summary judgment on her Rehabilitation Act claim in favor of SUNY Stony Brook pursuant to Federal Rule of Civil Procedure 56. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

## I.  Standard of Review

"Our standard of review for both motions to dismiss and motions for summary judgment is de novo." *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013) (internal quotation marks omitted).

With respect to a motion to dismiss, we construe a complaint "liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (internal quotation marks omitted). However, we "are not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted), allegations that are "no more than conclusions," or "naked assertion[s] devoid of further factual enhancement," that are insufficient to show the plaintiff is entitled to relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (internal quotation marks omitted).

On a motion for summary judgment, we similarly "construe the evidence in the light most

favorable to the [non-moving party], drawing all reasonable inferences and resolving all ambiguities in their favor." *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017) (internal quotation marks omitted). Summary judgment is appropriate only if, "based on the pleadings and evidentiary submissions," *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 196 (2d Cir. 2019), "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted).

## II. Section 1983 Claim

Gentleman argues that the district court incorrectly dismissed her due process claim under Section 1983. In particular, in connection with the nonrenewal of her contract, Gentleman alleges that she "was deprived of the process of facing her accusers and such was done in a manner that was timed based upon the calendar to prevent her from voicing her concerns to the full faculty to challenge a patently unlawful discriminatory decision." App'x at 87. As set forth below, Gentleman failed to plead a plausible due process claim.

"To plead a violation of procedural due process, a plaintiff must plausibly allege that [s]he was deprived of property without constitutionally adequate pre- or post-deprivation process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013). Thus, to plausibly state a claim, "a plaintiff must 'first identify a property right, second show that the government has deprived h[er] of that right, and third show that the deprivation was effected without due process.'" *Id*. (quoting *Local 342,*

4

*Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)) (alteration omitted).

The district court correctly held that Gentleman failed to plausibly allege that the deprivation was effected without due process. Where the claim is that the loss of an alleged property right (here, a contractual right to continued employment) is the result of "a random, unauthorized act by a state employee, rather than by an established state procedure," *Hudson v. Palmer*, 468 U.S. 517, 532 (1984), "the Due Process Clause of the Fourteenth Amendment is not violated . . . so long as the State provides a meaningful post[-]deprivation remedy," *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Moreover, under such circumstances, "[w]e have held on numerous occasions that an Article 78 proceeding is a perfectly adequate post[-]deprivation remedy." *Id*. at 881 (collecting cases). This is true "even though [a] petitioner may not be able to recover the same relief [in an Article 78 proceeding] that [s]he could in a [Section] 1983 suit." *Id*.

Here, as the district court noted, Gentleman does not allege that she ever attempted to bring an Article 78 proceeding in New York State court, nor does she allege that such a remedy was unavailable. Accordingly, because Gentleman had an Article 78 proceeding as an available remedy as to any alleged deprivation of process with respect to the nonrenewal of her contract, her due process claim fails as a matter of law. *See, e.g., Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of [her] resignation, [s]he was not deprived of due process simply because [s]he failed to avail h[er]self of the opportunity.").

5

Gentleman does not address this binding precedent regarding an adequate post-deprivation remedy. Instead, she rests her entire challenge to the district court's dismissal of her due process claim on a purported "internal inconsistency" in the district court's decision because the district court denied SUNY Stony Brook's motion to dismiss the claim on the alternative grounds argued with respect to the other two elements—namely, a protectable property right and deprivation of that right. Appellant's Br. at 11; *see* App'x at 77 ("[T]o the extent the Defendants seek to dismiss the Plaintiff's [Section] 1983 procedural due process claim on the ground that the Plaintiff failed to plausibly allege a protectable property interest, their motion is denied."); *see also* App'x at 78 ("[T]o the extent the Defendants seek to dismiss the Plaintiff's [Section] 1983 procedural due process claim on the ground that the Plaintiff failed to plausibly allege a deprivation of her property right to continued employment, their motion is denied.").

These rulings by the district court against SUNY Stony Brook as to the first two elements do not create any internal inconsistency in the district court's decision to dismiss the due process claim because of Gentleman's inability to satisfy the third element. *See* App'x at 80 ("[T]o the extent the Defendants seek to dismiss the Plaintiff's [Section] 1983 procedural due process claim *on the ground that any right to federal relief is precluded by the existence of an adequate post-deprivation remedy under State law*, their motion is granted.") (emphasis added). In other words, to survive a motion to dismiss, Gentleman must set forth allegations that state a plausible claim that could satisfy *all* of the elements, including the absence of an adequate post-deprivation remedy. *See, e.g.*, *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 882 ("Even if [plaintiff] has a protectable property and liberty interest—on which we express no opinion—

6

[plaintiff], because of the availability of an Article 78 proceeding, was not deprived of such property or liberty without due process of law.").

In sum, even though the district court held that Gentleman adequately pled the first two elements of the claim (the merits of which we do not review here), the district court properly held that the due process claim fails as matter of law because of the existence of an adequate post-deprivation remedy in the form of an Article 78 proceeding.

### III.     Rehabilitation Act Claim

Gentleman also argues that the district court improperly granted SUNY Stony Brook summary judgment on her disability discrimination claim under the Rehabilitation Act.   We disagree.

Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794(a), provides that "[n]o otherwise qualified individual with a disability in the United States, as defined by section 705(20) of this title, shall, solely by reason of her . . . disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

In assessing an employment discrimination claim under the Rehabilitation Act, we apply the relevant standards set forth in the Americans with Disabilities Act of 1990 (the "ADA").   *See* 29 U.S.C. §§ 791(f), 794(d).   Thus, we analyze claims arising under Section 504 according to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 48–49 (2d Cir. 2002), *superseded by statute on other grounds*.   To succeed under that framework, "[a] plaintiff must

7

establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (internal quotation marks omitted). With respect to causation, a plaintiff must demonstrate that disability was the "but for" cause of the adverse employment action. *See Natofsky v. City of New York*, 921 F.3d 337, 347–48 (2d Cir. 2019) (holding that "but-for" causation is required for employment discrimination claims under both the Rehabilitation Act and the ADA).

The elements of a *prima facie* case are: "(1) the employer is subject to the [Rehabilitation Act or] the ADA; (2) the plaintiff is disabled within the meaning of the [Rehabilitation Act or] the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam) (setting forth elements of *prima facie* ADA case); *accord Biodo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019). The district court concluded that Gentleman's claim under the Rehabilitation Act could not survive summary judgment because, "drawing all reasonable inferences in favor of Plaintiff, the Court is unable to conclude that she was under a disability or was regarded as having a disability as defined by the Rehabilitation Act." App'x at 40. However, we need not address that issue because we conclude that, even assuming *arguendo* that Gentleman could establish a *prima facie* case (including that she was disabled), no rational jury could find that the legitimate,

8

non-discriminatory reason articulated for her nonrenewal was a pretext for discrimination, and that her alleged bipolar disorder was the "but-for" cause for her nonrenewal. *See Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018) ("We may affirm the decision of the District Court for any reason supported by the record.").

As a threshold matter, Gentleman seeks to argue that her colleagues "regarded her" as disabled and contributed to the adverse employment decision by the decisionmaker (Chairperson Michael Dudley), thus establishing liability under what is known as the "cat's paw" theory of liability. The "cat's paw" theory of liability imputes a discriminatory motive to a decisionmaker of an adverse employment action where such action is proximately caused by the animus of his subordinate—that is, "the supervisor, acting as agent of the employer, has permitted himself to be used as the conduit of the subordinate's prejudice." *Vasquez v. Express Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016) (internal quotation marks and alterations omitted). We have never determined whether the "cat's paw" theory of liability can apply under the "but-for" standard of causation applicable to claims under the ADA and Rehabilitation Act. *See Natofsky*, 921 F.3d at 351 (declining to decide the application of the "cat's paw" theory of liability to ADA and Rehabilitation Act claims). However, we need not address that issue here because there is insufficient evidence from which a rational jury could find but-for causation, even if Gentleman is permitted to rely upon this theory of liability.

SUNY Stony Brook asserts that "the nonrenewal decision was based on Gentleman's abusive behavior and bullying of students," Appellee's Br. at 26, and submitted evidence to support that legitimate, nondiscriminatory reason. More specifically, SUNY Stony Brook points

9

to numerous student reports that it received of Gentleman's verbal abuse, bullying, public shaming, and unsupported accusations of cheating against students, as well as negative student evaluations, and an unprecedented number of graduate students who dropped Gentleman's course. In fact, Chairperson Dudley was so concerned about these complaints that he held a meeting with the students on October 29, 2014, where his assistant took minutes. Those minutes reflect numerous complaints from Gentleman's students regarding her mistreatment of them, and the "atmosphere of fear" and humiliation she created in the classroom. *See* App'x at 234–37.[2] It was two weeks after that meeting, on November 14, 2014, that Gentleman received notice that her contract would not be renewed.

On appeal, Gentleman does not contest the fact that these complaints were made, nor does she address them in any meaningful way as it relates to SUNY Stony Brook's employment decision. In the district court, Gentleman merely argued that the complaints were inadmissible hearsay and, thus, could not be offered for their truth. However, such statements are not being

---

[2] The notes reflected, *inter alia*, these comments from students: App'x at 235 ("Student 1: "Everyone in the class is scared of her and the atmosphere is more like fear in everyone to do this class. We do not like to come to this class and as the days are going by more and more people do not want to attend this class. . . . [T]here are about 24-25 students who have concerns like us but they are scared to report her as she tells in the class [']I don't care if you report me but I will know who is reporting['] and students feel they will have bad grades just for telling on her."); App'x at 236 ("Student[] 7: Students are basically scared to even open their mouth."); App'x at 236 ("Student 4: The worst thing is we cannot ask questions, you never know when she will answer properly or scream at you."); App'x at 236 ("Student 5: Mostly what she does and how she does [it] is very unprofessional? Someone who is teaching must not have such demeanor. I am not one of the target students but to sit through this makes me feel very uncomfortable."); App'x at 237 ("Student 3: Just today there was this boy who sits in the front and asks a lot of questions and every time he asks a question she screams at him. Today she yelled at him so badly. This happens every day and she humiliates the kid so badly all the time.") Additionally, anonymous student course evaluations contained similar comments, including that Gentleman "ma[de] it apparent that [she] hate[d] certain students, for example that time [she] said in class that [she] 'hate[s] that kid.'" App'x at 242.

10

offered for their truth, but rather as proof as to what was motivating the nonrenewal decision. *See McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what *motivated* the employer." (internal quotation marks and citation omitted)). Moreover, in the wake of these substantial student complaints, Gentleman provides no evidentiary support for her conclusory assertion that the decisionmaker, or any of the colleagues who reported information to the decisionmaker, were motivated by her disability, instead of by the student complaints.

In sum, given the uncontroverted evidence of the quantity and nature of the student complaints that SUNY Stony Brook received regarding Gentleman's performance and behavior while teaching, no rational jury could find that the reason given for the nonrenewal was pretextual and that her contract would have been renewed but for her disability. *See Natofsky*, 921 F.3d at 351 (granting summary judgment where "construing the evidence in the light most favorable to [plaintiff] and drawing all reasonable inferences in [her] favor, no reasonable juror could conclude that [plaintiff] would have retained his position but for [her] disability") (internal quotation marks and citation omitted). Accordingly, the district court correctly granted summary judgment to SUNY Stony Brook on the Rehabilitation Act claim.

*   *   *

We have considered all of Gentleman's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders and judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12